# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

KENYATTA C. ROSS #290-752,

    Plaintiff,                            :

    v.                                    : CIVIL ACTION NO. RWT-12-3345

WEXFORD HEALTH SOURCES, INC., *et al.*,   :

    Defendants.

## MEMORANDUM OPINION

This 42 U.S.C. § 1983 prisoner civil rights action seeks money damages and injunctive relief for the alleged denial of proper medical care.[1] Kenyatta C. Ross ("Ross"), a Maryland Division of Correction ("DOC") prisoner housed at North Branch Correctional Institution ("NBCI"), claims that prison health care providers have delayed and/or withheld proper diagnostic tests and treatment for an elbow injury sustained in April of 2010, resulting in permanent nerve damage, daily pain, and discomfort. Ross named individual health care providers Ava Joubert, M.D., Colin Ottey, M.D., Renalto Espina, M.D. (hereinafter "Espina"), Stephen Ryan, M.D., and Physicians' Assistants Greg Flury and Lisa Schindler.[2] Prison health care providers Wexford Health Sources, Inc. (hereinafter "Wexford")[3] and Corizon, Inc. were also named in the Complaint.

---

[1] Ross again requests appointment of counsel. ECF No. 34. For reasons previously articulated, ECF No. 27 at 1 n. 2, there are no exceptional circumstances that would warrant the appointment of an attorney to represent him under §1915(e)(1). The motion shall be denied.

[2] Corrections personnel were dismissed from this action on November 26, 2012. ECF No. 3.

[3] From July 1, 2005 through June 30, 2012, Wexford was under contract with the State to provide utilization review management services in connection with the delivery of health care to Maryland prisoners. During this period, Wexford did not provide direct medical care to prisoners, but rather reviewed and acted upon requests for referrals for specialty care, surgeries, certain diagnostic tests, and the provision of special medical equipment or devices. On

Defendants Corizon, Joubert, Ottey, Flury, Ryan and Schindler have been granted summary judgment or dismissed from the case. ECF Nos. 27 and 28. Defendants Wexford and Espina have filed court-ordered supplemental dispositive motions construed as Motions for Summary Judgment. ECF Nos. 29 and 31. Plaintiff has filed a cross Motion for Summary Judgment (ECF No. 35), opposed by both remaining Defendants (ECF Nos. 37 and 38).[4] A hearing is not needed to resolve the constitutional issues presented. *See* Local Rule 105.6. (D. Md. 2011).

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation

---

July 1, 2012, Wexford also became the medical contractor for Maryland prisoners. ECF No. 18, Ex. 1, Affidavit of Joseph Ebbitt, a risk manager for Wexford.

[4] Wexford sought additional time to file its opposition response. ECF No. 36. The request is granted nunc pro tunc.

of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

### Eighth Amendment Right to Medical Care

As discussed fully in the Memorandum Opinion of June 24, 2013, Ross must satisfy the "objective" component of his Eighth Amendment claim by illustrating a serious medical condition, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998), and if successful must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Ross is not entitled to unqualified access to health care, *see Davis v. Williamson,* 208 F.Supp.2d 631, 633 (N.D.W. Va. 2002) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)), and mere disagreement with the course of treatment does not state an Eighth Amendment claim,[5] *see Taylor v. Barnett,* 105 F.Supp.2d 438, 487 (E.D. Va. 2000) (citing *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985)).

---

[5] Ross's claim of medical malpractice or medical negligence was unsuccessfully presented to Maryland's Health Care Alternative Dispute Resolution Office in HCA No. 2011-686. *See* ECF No. 16, Ex. 1. As previously noted in the Memorandum Opinion of June 24, 2013, p. 2, n. 3, this Court declines to exercise supplemental jurisdiction over any state tort claim presented here.

**Discussion**

The following facts, gleaned from the medical record, are discussed more fully in the previous Memorandum Opinion, but are reiterated as needed here.[6] On April 4, 2010, Ross, who suffers from sickle cell anemia,[7] asthma, and renal disease, indicated he had pain in his right elbow lasting for three weeks. Ross reported a "popping sound with extension" and swelling. Examination revealed mild pain with motion. A physician's assistant ("PA") diagnosed a sprain and provided an ACE wrap. Ross did not appear for a scheduled appointment with a physician, but thereafter complained of generalized joint pain and indicated he struck his elbow on his bunk. Ross was prescribed four months of acetaminophen (for pain relief)[8] and indomethacin (for relief of pain and inflammation)[9] by another PA, who found no swelling and equal grip strength with a slight decrease in elbow extension due to pain. The PA requested that Ross be provided physical therapy ("PT") for the elbow.

A physical therapy ("PT") evaluation was performed on May 6, 2010, at which time Ross reported he injured the elbow six weeks earlier while doing pullups. Although there was less swelling, Ross indicated that stretching caused pain. Ross missed his May 18, 2010 PT session, but on May 27, 2010, reported to Physical Therapist Lloyd Hott that PT decreased his pain. An x-ray of the elbow taken in July of 2010 showed no evidence of acute fracture, disclocation or subluxation.

---

[6] Record citation is made to newly submitted material provided with the parties' supplemental dispositive pleadings.

[7] Ross's sickle cell anemia is not addressed in connection with diagnosing and treating his joint pain, but merely is listed as one of his chronic health conditions.

[8] *See* http://www.drugs.com/acetaminophen.html.

[9] *See* http://www.drugs.com/mtm/indomethacin.html.

4

On January 20, 2011, a PA examined Ross, noting that PT no longer provided therapeutic benefit, and that Ross continued to have pain despite medication. The PA noted that the elbow had full range of motion but lacked some extension. Ross indicated he could perform his work detail as a dietary attendant carrying up to ten meal trays, but could not do pullups or pushups without pain. An orthopedic consultation was suggested. On January 22, 2011, glucosamine chondroitin[10] was added to Ross's treatment regimen.

Ross was seen by PAs and nurses several times during January and February of 2011. On February 15, 2011, he was approved for outside consultation with Dr. Shelton, a pain management specialist at Bon Secours Hospital.

Dr. Shelton indicated an MRI would be needed to explore whether Ross had suffered a tear of the right triceps tendon or an adjacent ligament. On May 18, 2011, a PA examined Ross and noted the MRI request was reviewed and deferred so that Dr. Smith, a member of the utilization management team, could speak further with Dr. Shelton. The PA also noted that Ross "continues to defer prescriptions for pain due to his chronic renal disease."

On June 8, 2011, Defendant Ottey recommended an MRI, which was performed on an unspecified date. A note dated June 20, 2011, indicates that the MRI showed moderately large elbow joint effusion (swelling), with multiple "filling defects" within the effusion, suggesting synovitis or intraarticular bodies. No chondral lesion or evidence of fracture or ligament tear were found, and muscles and tendons were normal and intact. It was recommended that Ross undergo diagnostic aspiration to evaluate whether he suffered from inflammatory arthropathy or synovitis. The utilization management team recommended that Dr. Shelton, Bon Secours' pain management specialist who already had examined Ross, perform the aspiration, rather than an

---

[10] This dietary supplement is taken for treatment of arthritis. Its degree of effectiveness is not fully known. *See* http://nccam.nih.gov/research/results/gait/qa.htm.

orthopedist. Attempts to contact Dr. Shelton were unsuccessful, so the procedure was scheduled to be performed by Dr. Espina in the prison clinic.

Espina never performed the procedure recommended by Shelton, a decision that in large part is implicated in Ross's allegation that he has been denied appropriate treatment. On the day of the procedure, Espina found no swelling in Ross's right elbow, and thus could not aspirate the joint. Espina claims that because Ross was complaining of pain in the left elbow, he used lidocaine as an anesthetic and injected Depo-Medrol[11] into the right epicondyle portion of the left elbow in an attempt to alleviate the pain.[12] ECF No. 31, Ex. 1, pp 1-2; Ex. 2. Ross, however, claims that Espina did inject something into the right elbow, but did not aspirate fluid or obtain a sample of material from the joint to submit for laboratory analysis as recommended by Shelton.

The medical record is unclear and the parties continue to disagree as to what procedure was performed that day. Ross continues to argue that fluid should have been removed from the right elbow area and evaluated for infection. ECF No. 35, p. 1. By his own admission, however, the pain in that elbow is intermittent and often is not present during his scheduled medical visits. *Id.,* p. 2. There is no medical evidence suggesting that the injury to the right elbow was caused by anything other than trauma while doing pull-ups; thus, the absence of such testing on the right elbow, without more, does not demonstrate deliberate indifference.

Following the procedure with Espina, Ross next complained of right elbow pain radiating down his arm with numbness and tingling "so bad I can't use it," during a January 31, 2012 nurse visit primarily scheduled to address other complaints of left knee and ankle pain. Ross was

---

[11] Depo-Medrol is an anti-inflammatory glucocorticoid used to treat pain and swelling that occur with arthritis and other joint disorders. *See* http://www.rxlist.com/depo-medrol-drug/consumer-uses.htm.

[12] This was the only occasion on which Dr. Espina provided treatment to Ross. ECF No. 31, Ex. 1.

prescribed amitriptyline,[13] glucosaamine chondroitin, Naprosyn[14] and Tegretol.[15] This regimen was continued in February, 2012, when Ross was examined by Dr. Ottey, who also ordered x-rays of Ross's ankle and foot.

By March of 2012, Ross's medical complaints focused on his left knee and ankle problems. On March 27, 2012, Dr. Ryan examined Ross for his complaints of left knee and ankle pain, and ordered physical therapy, which took place on several occasions during April 2012. On April 11, 2012, Dr. Ottey continued Ross's medications. Ross continued physical therapy. His primary medical concerns remained left knee and ankle pain. On April 25, 2012, he was prescribed a knee brace. Despite PT and medication, he continued to suffer left knee pain. He reported both knee and elbow pain to Flury on July 25, 2012. On August 3, 2012, he was seen by Dr. Ali Yahya for knee and elbow pain, and reported that although medication did not control his pain, his discomfort did not impede his daily functioning, including playing basketball and performing squats. He continued to complain of knee pain and received a steroid injection from Dr. Yahya on October 13, 2012.

On December 13, 2012, Ross again complained of right elbow pain. Pulses were normal and the area was not swollen. A pain management referral was noted to be pending. On December 24, 2012, PA Jonas Merrill examined Ross, who indicated he had filed this action. Additional x-rays read on January 28, 2012, showed no evidence of fracture. The orthopedic

---

[13] Amitriptyline is used to treat syptoms of depression and works on the central nervous system to increase levels of certain chemicals in the brain. *See* http://www.mayoclinic.com/health/drug-information/DR602731.

[14] Naprosyn is a nonsteroidal anti-inflammatory drug that reduces hormones that cause inflammation and pain, and is used to treat pain or inflammation caused by arthritis, tendinitis, bursitis or gout. *See* http://www.drugs.com/naprosyn.html.

[15] Tegretol (carbamazepine) has many uses, including use to decrease nerve impulses that cause pain. *See* http://www.drugs.com/tegretol.html.

consultation was placed on hold. On January 1, 2013, Ross was approved for six months of "front cuffing" to avoid elbow pain.

Clearly, Ross is suffering not just from sporadic pain in the right elbow, but also from more general pain which now affects multiple joints. Given Ross's increasing symptoms involving multiple joints, Wexford health care providers provided additional evaluation by an orthopedic specialist, Dr. Lawrence Manning, who noted no changes in the condition of the right elbow since the June 15, 2011 MRI, and no swelling.[16] ECF No. 38. Dr. Manning recently reviewed an x-ray taken in October of 2013, and found "moderate degenerative changes of the medial elbow joint" indicating arthritis of the right elbow. *Id.* Nothing in Dr. Manning's report suggests a need to remove fluid from the joint to test for infection as the cause of Ross's ongoing elbow pain. Dr. Manning "recommended completion of a rheumatoid profile, a prescription for Naproxen and that Plaintiff complete range of motion exercises." *Id.* An order for a rheumatoid panel has been issued and Tylenol has been substituted because Naproxen is contraindicated given Ross's kidney problems. *Id.*

Ross's medical care has proceeded at a conservative, albeit appropriate, pace. The MRI revealed possible causes of the pain and swelling that at first suggested a need for additional diagnostic evaluation of joint fluid to determine a cause. On the day the diagnostic procedure was scheduled, Dr. Espina found no reason to aspirate joint fluid in the right elbow, and instead performed an in-house procedure on Ross' other elbow to alleviate pain from that source.

In sum, Ross's right elbow pain (as well as the pain affecting other joints) may be caused by arthritis caused by trauma, joint degeneration, gout, or rheumatoid or osteoarthritis. ECF No. 29, Affidavit of Contah Nimely, Ex. 2. Health care professionals appear to be focusing less on

---

[16] The fact that the previous MRI was not made available during Manning's first review of Ross's condition, although sloppy, does not evidence deliberate indifference. *See* ECF No. 38.

what might have caused the condition in the right elbow joint, and more on whether Ross suffers from generalized arthralgia that has developed in other areas of his body that may be caused by a rheumatic disease. It is unfortunate that Ross continues to experience discomfort and is dissatisfied with the lack of a clear diagnosis and the medical care provided thus far. Nonetheless, the care received does not demonstrate deliberate indifference and is constitutionally adequate under an Eighth Amendment analysis.

What remains at issue centers around Defendants' assertion that Ross continues to receive pain medication and diagnostic testing, and Ross's assertion that what little medication is provided is ineffective and that testing is slow at best. The Court notes that the promised MRI of Ross's knee and follow-up consultation with Dr. Manning is last reflected in notes from August 2013. Defendant Wexford shall be required to provide a status report and any appropriate affidavits and updated medical records reflecting the results of the MRI as well as Manning consultation, together with a demonstration as to Ross's medication regimen and treatment plan before the case will be deemed closed.

For the aforementioned reasons, Ross' Motion for Appointment of Counsel is denied; Defendant Espina's Motion for Summary Judgment granted; Plaintiff's Motion for Summary Judgment denied; and Defendant Wexford's Supplemental Motion for Summary Judgment denied without prejudice subject to renewal upon the Court's receipt of the supplemental status report outlined above. A separate Order follows.

Date: <u>January 16, 2014</u>                                    <u>      /s/      </u>
                                                                                        ROGER W. TITUS
                                                                                        UNITED STATES DISTRICT JUDGE